Final case today, number 23-2026, John Cohen versus the City of Portland et al. At this time, would counsel for Appellant Cohen please introduce himself on the record to begin? Good afternoon, your honors. Attorney Byron Parity for John Cohen on behalf of his son, Eric Cohen. This case arises from a motion to dismiss and a motion to suppress that was ruled on by Judge Torson in the Main District Court involving the untimely and unfortunate death of Eric Cohen. The facts of this case are laid out well in the briefs. The videos, if the court has had the opportunity to show them, are probably the best evidence of what happened on the day in question, but this really is a state-created danger situation that really stems from the City of Portland's lack of training for its police officers in the area of mental health, crisis intervention, properly administering first aid, and tending to people who are in danger of dying or being significantly injured. Now the court, as you are aware, ruled on summary judgment, well they ruled on dismissal that we had not established that Cohen and, I mean that the two officers had, that we had gotten over that, gotten over the threshold and they were dismissed, but I think it's very important for the court, and on page 17 of my brief I recite in its motion, in the order on motion to dismiss, the court writes, numerous members of the Portland Police and Fire Departments were unprepared to deal with situations involving people experiencing mental health crises and or those in need of water rescue, allowing it, the court I Furthermore, the complaint plausibly allows it to infer that the deficiency in training caused the officer's indifference to Cohen's constitutional rights, ultimately leading to his death. And then finally, the allegations in the complaint are troubling details that raise questions about the police department's training in these matters. Hence, we prevail against the City on the motion to dismiss. Throughout discovery, we learned even more troubling details about the lack of training, specifically in mental health and crisis intervention. We, I've pointed out in the record, the officer's training records, and again, appellee and the court cites to them undergoing an initial 40-hour training course, but I think it was the City's own recognition that annual training and certification needed to be provided. If the court sees the videos or looks at the record, absolutely no mental health crisis intervention techniques were attempted. The most that was done was, hey, come on out here and discuss this, or at one point, one of the officers saying, hey, your dad wants to talk to you. I believe that was in response to Mr. Cohen calling out for his dad to help him. However, they also didn't consult with a mental health professional or anyone else. And as you know, Mr. Parody, I think your claim is that, is not that the state, the City officials failed to do something, is it? I think, I thought the claim you brought is that the defendants created the danger that caused your client's death. Yes, Your Honor. And that, but I think that- So they could have had no training and sent no officer out at all and ignored the call, and you wouldn't have a claim. Yeah, I guess that's, I hadn't thought of that. Yes. I said, well, I'm not sure. No, I think we would have a claim if there was a report, if they had awareness that Mr. Cohen was in the back bay in April, I think, and they just didn't respond, then that would have been a different, a different claim. So what law would support that? Well, I think that would, I mean, I think that's a deliberate act if they deliberately fail to respond to an emergency call. I mean, I don't have the case law in front of me, but I've got to think that that's a deliberate act. Let's assume for a second, without you conceding, that the city police have no constitutional obligation to respond to a complaint. But if they do respond, they can't create the danger in the first instance that causes the problem. Well, I'm going to admit your question has caught me off guard. I haven't researched whether they have a duty to respond to an emergency, but I would, it would fall within their constitutional obligations to respond to it. But I don't have any anything to cite that, Your Honor, I apologize. So what are you saying they did to cause this, other than being negligent in the training? Sure. So if the video, as the statement of facts played out or set forth, the officer, Mr. Cohen had run across the highway naked and was lying on the beach. When the officer got out of his car and started chasing after him, causing Mr. Cohen, arguably causing Mr. Cohen to go into the waters. They then had multiple police officers and a dog on the, and fire department personnel on the shore, one of which who was mocking Mr. Cohen. And then they purposely didn't take action to try and save his life. And I know that's not the standard, but they purposely didn't utilize their CIT training because they had not been properly trained and they needed to get a mental health professional there or try to, they needed to, this wasn't a, as Iris talks about, this wasn't a second long thing where it was quick to react. And there was twenty three or so minutes where they had making, where Sergeant Rand was making intentional decisions as to what to do in, under these circumstances. So I think it's, and then, and then when he gets out of the water, the video clearly shows there's no, when he gets on the boat, there's no even CPR and on the beach, he's just, they just let him lie there naked knowing that he was probably hypothermic and struggling. So their actions, Your Honor. And I think it, I think it's clear and I think it's Irish. I'm not sure if it's one or two. It says when an officer disregards police procedure, it bolsters the plaintiff's argument that the officer's conduct shocks the conscience. And I think that's exactly what we have in this case, is failing to follow their police procedure. And it's probably, and I argue it is because the city did not adequately train them. And so I think the. What are you saying is the procedure they should have followed? Well, the procedure required them to utilize CIT tactics. That's part of the procedure. I don't know what page of the addendum it's in. So this is after they fish him out of the water. No, no. To get him out of the water. He was in the water for a long period of time. So there's a there's a countervailing policy that says that the officer is not to put his or her own safety in jeopardy. Yes. Which was a decision I thought ran. I believe it was made as to why he wouldn't let the other officer go in the water. Well, I think that's what he said. I think the but this is a unique set of facts where the other officer was a trained rescue or cold water rescue individual from the Coast Guard. And he he was. And not only that, the nobody on that beach made an effort to contact somebody. It's like a hostage situation. Right. You don't send a person who's not trained to deal with a hostage situation into a hostage situation and hope for the best. That's why they train people and that's why they have training in place. So they did not get someone on that beach that could have communicated with Mr. Cohen in a way that would have helped him to come to shore. That's I don't know if I answered your question, but that was that was that. Counselor, let me ask you from a more procedural standpoint. This is a summary judgment. And you argued to us and you mentioned judges. Look at the video. Look at the video. But the district of Maine, just like all the other districts in the First Circuit, I assume in most other districts, there's a local rule, local rule 56. And my question is, using that rule within the summary judgment procedural framework, how aside from simply citing, look at the video, look at the video, how have you established any issues of material facts as to a causation in order for you to be entitled to a jury trial? OK, so I'm assuming that the court's question is, well, I guess I'll assume that if the videos don't themselves create a material fact, then certainly the record. What I'm saying is, for example, in the summary judgment motion, using local rule 56, I use from the court, you know, look at video minute one point three seconds to one point eight seconds or look at this because it's you just can't simply rely on a general, whatever, let's say 10, 15 minute video. You have to be very specific when it comes to these summary judgment local rules. Sure. And I think the statements of fact refer to the portions of the video where things occurred and say, you know, the officer said X, Y and Z or the fireman said threatened bodily harm to the guys. So I guess I thought, I believe I complied with the local rule, but obviously that's your decision to make. So does that mean my time's up? Oh, I heard the beep go off. That's a warning. But you still have four and a half minutes. OK. So I just want to talk a little bit on the causation. And I know that counsel spends, opposing counsel spends a great deal of time dwelling on the issue of whether, you know, there's proof that his Mr. Cohen's prolonged exposure to the water led to his death or that he would not have died. But for that prolonged exposure. And I think, you know, the case law and I've cited it and I was just trying to find it shows that you don't necessarily need an expert. I think I found it for that issue. And it says, I think this is Irish. This is Irish too. As the court indicated in the main law, causation need not be proved directly, but may be inferred if the inference flows logically from the facts and is not unduly speculative. Speculative. I think a jury, as I've printed in my brief, all of us know that the longer you're exposed to cold, frigid waters, the better chance you're going to get hypothermia can die. I think that's something we've been taught since we were kids. I don't, I don't see how an expert was required to pretty, to establish that when that's a very reasonable inference. So unless there's further questions. I had intended to reserve rebuttal, but I forgot. It's fine. Well, you've got three minutes left. Well, you can use that in rebuttal. Okay. Thank you. Would counsel for the Appalese please introduce yourself on the record to begin? Good afternoon. Keisha Park for the Appalese City of Portland. Christopher Jouffet, Michael Rand and Ronald Giroux. The Supreme Court established in Ducheney that there is no constitutional right to a We're talking here about an exception to that general rule. The state created danger exception that this court formally recognized in Irish too. Here, the court properly found that there were no affirmative acts by either Sergeant Rand or Sergeant Jouffet that either created or enhanced the danger to Mr. Cohen. If you look at the facts alleged against Jouffet, and this is at the motion to dismiss phase, which the court granted to both of the police officers. The facts alleged against Jouffet is that he commissioned a fireboat, drove across the city, waited for two police officers to get on the boat, and then they went to attempt to rescue Mr. Cohen. Those are the facts alleged against Sergeant Jouffet. As to Sergeant... Is it Jouffet who made the statement threatening him if he came out of the water? No, Your Honor. Which one was that? That was alleged to be against Ronald Drew, the firefighter who arrived at the scene approximately 20 minutes after Mr. Cohen had already been in the water. As to... What about that statement? Why isn't that the necessary causation? Because assuming that he may have come out of the water, the threat may have caused him not to come out of the water. So, Your Honor, the court considered that on the summary judgment. So Rand and Jouffet were on the motion to dismiss, and Jouffet was on the motion for summary judgment. And you're correct, Your Honor. The district court assumed that that statement enhanced the danger to Mr. Cohen, which we've accepted for purposes of the appeal. However, there was no causation here because by the time Jouffet arrived on scene, Mr. And so that's where the issue of an expert has to come into play. Because here, a jury would have to speculate that once Drew made that comment, Mr. Cohen, after being in the water for 20 minutes and he was suffering psychosis or some sort of mental health crisis, could have removed himself from the water and then also would have survived. And that's where the causation element is missing here. And so if there's further questions about that, I'm happy to answer them. But just briefly to go back to Sergeant Rand for the motion to this, for purposes of the motion to dismiss, he also arrived at the scene later in the incident. And the allegations against him in the complaint are that he at one point told Officer Cunningham not to go into the water. He then said, I'm OK if you go into the water, if you get a life jacket. But you're absolutely right, Your Honor, that Sergeant Rand is clearly weighing a whole host of competing considerations here. And this wasn't a case where we're just talking about a mental health crisis, someone who was in their apartment, in their house, suffering mental health crisis. In those types of situations, the policy does dictate that certain protocols should be followed. And the policy states, which is in the record, that part of the whole purpose is to slow down the encounter and take as much time as possible to interact with that person. However, here, the facts confronted were extremely different. It was not just a mental health crisis. Mr. Cohen had committed a domestic violence assault against his girlfriend, stripped naked and then fled into the water. And so you're talking about a combative suspect who had committed a domestic violence assault, someone who has a mental health crisis and then also fled into the frigid cold waters. So this is not a typical straight to create a danger case. Mr. Parody cited, I believe, that someone chased, arguably chased him or caused him to go into the water. Yes, Your Honor. So for purposes of the motion to dismiss, so that's to Rand and Gervais, the court inferred that a different officer chased him into the water. So at the motion to dismiss phase, that is that is correct. That that's the set of facts that the court was considering. However, under this court's precedent in Johnson and Welch, we have to look at the individual officer's acts. So we have to separate out what other officers did as compared to Rand and Gervais and whether their acts affirmatively enhanced or created the danger to Mr. Cohen. And I submit to you that on the facts alleged against them, they certainly did not. So you're saying the officer who allegedly chased him and therefore he went into the water is not a defender? Correct, Your Honor. And then at the motion for summary judgment phase, once the court had the full, all of the body camera videos, because at the motion to dismiss phase, the plaintiff only submitted one body camera video, which the court considered. At the motion for summary judgment phase, the record was more robust. And based on that record, the court concluded correctly that an officer did not force him into the water. Yes, they were chasing him because he had just committed a domestic violence assault. But they did not corner him and make him go into the water. And that's clear from the record, both from the body camera video, but also from those screenshots of the video that we stipulated to showing that the officer who is pursuing him was about 150 feet away. And there were multiple avenues that Mr. Cohen could pursue instead of directly into the water. Just briefly touching on qualified immunity for purposes of Sergeant Gervais and Sergeant Rand, the district court did not address qualified immunity at the motion to dismiss phase. But I would submit to you that they were both entitled to qualified immunity. And that would be an alternative basis to affirm the decision here because it would not have been clear to those officers in this really unusual situation that they were required to affirmatively attempt to rescue him personally. And that's what essentially plaintiff is complaining of. Plaintiff is complaining that it was an unsuccessful rescue. That does not implicate the state created danger. I believe one of the arguments that you make for summary judgment that it should be granted because there's a lack of training would have prevented the death. Can you expand on that a little bit? Yes. So Cohen argues that if there were additional mental health intervention training, that would have made a difference in this situation. But the problem is, like I said before, this wasn't just a typical mental health crisis where you're on land and you have the opportunity to call in resources and take the time, like in a hostage situation. Here, someone was in the water and they were also suffering some sort of psychosis. And the plaintiff points to no other additional techniques. He generally says that they violated the policy or didn't use mental health intervention, but offers no suggestion as to what interventions could have made a difference here. There's also, this is not like Irish. In Irish, there was an expert, the motion for summary judgment phase, there was an expert witness who testified that the police specifically violated specific investigative techniques. And all of the parties in Irish agreed that the best time to interview a suspect is at the end of the case, as opposed to leaving a voicemail for them to come in. And so that's a very different case here. Here, we have nothing specific about what the plaintiff is complaining of, as far as what police protocol were violated or what policies were violated. And we have no expert testimony saying that they did anything wrong. So this case does not fall within Irish. Also, to the municipal liability claim, it's important to note that it's based only on a failure to train. We're not talking about an unconstitutional policy in general. It is a failure to train claim, which requires deliberate indifference. There was no pattern evidence introduced here that there were any prior similar constitutional violations. And there's no evidence supporting that the city had any notice that its training program was somehow deficient. And that deficiency would lead to constitutional violations. The record and the record evidence is clear that Portland's training program is robust. All that plaintiff... I believe it's mentioned somewhere in the brief that it complies with the applicable statutes. Absolutely. It met the minimum requirements. It's robust on paper. Sorry, what was that? It's robust on paper. It doesn't seem to be robust in practice if it's required annually and people ignore it. Your Honor, the only two officers' records, training records, that plaintiff points to are two officers. Plaintiff argues that it's all of the officers. That's simply not true. That's not in the record. The only two officers that plaintiff is pointing to are Sergeant Rand and Sergeant Gervais. And they were dismissed from this case. And so under this court's precedent in Young, those officers' alleged deficiencies cannot support a finding of a failure to train claim here. It doesn't meet the standard. And so when you're looking at the Portland program as a whole and not just those two individual officers, when you're looking at the training program as a whole, it does meet the minimum standards established by the state through the Maine Criminal Justice Academy. And it actually goes beyond that. It requires all of its officers to get the 40-hour training. And an argument that the training should have been different or administered more often does not establish municipal liability. And then I just want to touch briefly a little bit further on the claim against Ronald Drew, who was alleged to have made the comment the threat against Mr. Cohen while he was in the water. Again, just briefly, I would like to submit that he would also be entitled to qualified immunity on this record. Irish and this court's other precedent would not have given him notice that a singular comment made during this hectic environment could amount to a state-created danger claim against him for purposes of substantive due process. Unless there are further questions. Yes, I do have one along the lines I asked the opposing counsel. I know you mentioned this in your brief at the end about Local Rule 56 and that counsel alludes to the video in general terms. Judges look at the video, look at the video. But my question is, is there a statement or counterstatement of material facts that is very specific or your allegation is that it doesn't comply with that rule at all? I submit that it does not comply with the rule. Plaintiff cites repeatedly to the video in general and does not, except for a few exceptions to that, doesn't cite to specific times of the video. I would also submit that the parties have a robust set of stipulated facts here. We were actually able to agree on a lot of the facts in this case because they are on video. And I would suggest that the stipulated facts control and that's what the district court relied on primarily. Thank you. The appellees would request that this court affirmed both judgments. Thank you. Thank you, counsel. At this time, counsel for the appellant, please reintroduce yourself on the record. You have a three minute rebuttal. Thank you, Attorney Byrne Parity for the appellant. I guess I just want to go back to where it started and the district court in its order on motion to dismiss specifically stated that numerous officers appeared to be unprepared to deal with the situation they were dealing with with Mr. Cohen and that she even goes farther to say it allows her to infer that the deficiency in training caused the officer's indifference to Cohen's constitutional rights. We then, as counsel just said, the summary judgment record was much more robust after discovery, which actually bore out more facts and motion to dismiss. Now, with regard to Rand and Gerbe not being part of the that, I can't use them as part of evidence for their train lack of training because they were dismissed. My my argument is they shouldn't have been dismissed in the first place. And so I think that if they are not dismissed, then obviously their behavior and their lack of training can be considered with regard to a pattern of this type of behavior. There was a pattern. The pattern was not meeting their own policies in training these officers. Somebody is there any is there any other officer besides those two who have been specifically identified as not having had the annual training? We there is not. There is not. And I think I focused on them because they were the defendants. But but I did. There is no record of that. So how is that a pattern? Well, I mean, it established a pattern to the two. These were the two sergeants that were in charge of the scene. And had they not been dismissed, their relative training, they're the people who are making making the decisions to get a mental health counselor or to use to use some CIT techniques. And so, I mean, I think their evidence of their of their failing to follow their own policy, someone from the city of Portland thought it was And to put in there that they contact a mental health professional when they're in a situation, a crisis intervention site situation and to utilize crisis intervention tactics. Nothing in the record. Are there specific protocols in the record that you are saying support what procedures should have been followed? There is. I reference I apologize. He was looking at my brief earlier and I I think it's reference if it's not, it's in the statement of facts. The the the actual policy on mental health and the one on first aid or protection of life. There are two separate SOPs, but they're in the they're definitely in the addendum. And they reference contacting a person trained in mental health, something along those lines. And it also also mentions utilizing the CIT techniques that is in the in the in the record. Thank you. And I ask that the court remand this for further proceedings. Thank you. That concludes argument in this case.